E-FILED
Tuesday, 29 July, 2008  04:54:27 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.  05-4055 |
| SIX HUNDRED FORTY-FOUR THOUSAND EIGHT HUNDRED SIXTY ($644,860) DOLLARS IN U.S. CURRENCY, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## **O R D E R**

Before the Court is the joint Motion for Summary Judgment filed by Claimants ZigZagOrb.com International Ltd. and Jimmy Huynh [Doc. 44].  For the reasons that follow, the Motion is GRANTED.

### BACKGROUND

Claimant Jimmy Huynh and a passenger, Kiet Nhon Ta, were traveling through Illinois on Interstate 80 in a Volvo when they were stopped by Illinois State Police Officer C. Thulen for tailgating and for having an obstructed driver's view.  The events that occurred during the stop are in dispute.  These disputes have no bearing on the Motion before the Court and will not be explored in detail.  It is sufficient to note that the vehicle was subjected to a canine sniff test and was searched.  The officer found a black bag with a large amount of U.S. currency separated in bundles and wrapped with rubber bands.  Both Huynh and Ta were arrested.  After the arrest, Huynh indicated that the money was being transferred for "Mike" to "Xuan."  The money was seized and this action, *in rem*, was filed on June 28, 2005.  The Complaint alleges that the funds

are proceeds of illegal narcotics transactions and are subject to forfeiture pursuant to Title 21 U.S.C. § 881.

Both Huynh and ZigzagOrb.com International Ltd. ("ZIL") filed verified claims, asserting an ownership interest in the money, on July 27, 2005. ZIL asserts that the funds comprise various transfers made from September 2004 to December 2004 pursuant to loan agreements and Share Purchase Agreements. Claimants further assert that the funds were transported by Huynh through the United States (ZIL is a Canadian Corporation) pursuant to an agreement between Michel Jolicoeur and ZIL.

In support of these claims, Claimants provided various incorporation documents verified by Linda Dang, Director and Secretary/Treasurer of ZIL. (Claimants Ex. F). The documents indicate that ZIL was incorporated in British Columbia, Canada, on May 20, 2004 with up to 49 shareholders. (Ex. F, p. 7). The documents also include agreements between ZIL and dozens of individuals residing in Canada. (Ex. F pp. 22-32). Some of these agreements evidence loans made by individuals to ZIL at an interest rate of 12%. The remaining documents evidence share purchases for $9,000.00 in cash in 2004.

Claimants also include a confidentiality agreement between ZIL and Huynh and what appears to be a partnership agreement between the two. (Ex. F. pp. 17-20). This agreement appears to indicate that ZIL is in the business of "buying, selling, trading, and or licensing of new corporations and or enterprises" throughout North America in order to operate consignment depots for various items like cars and jewelry. Finally, the documents include an agreement between ZIL and Michel Jolicoeur wherein Jolicoeur would transport $675,000.00 to various locations in the United States at the direction of Huynh or ZIL. For this service, Jolicoeur would be paid $13,500.

In response to the Claimants' assertions regarding the legitimacy of the currency, the government highlights the suspect circumstances surrounding the transfer of money and casts

doubt on the veracity of the documents used to support ZIL's claims that the funds were derived from investors in the corporation. The government first notes that it is undisputed that the drug detection dog, Rocco, made a positive alert to the money thus indicating that it was tainted with illegal drugs. The government notes that there are other indicators that the money is drug money – for example, Huynh traveled from California, a drug source state, to the Midwest, a drug destination area, and was attempting to return to California with cash. The government further points out that there are inconsistencies between statements made by Huynh to Officer Thulen and Claimant's current arguments regarding the source and purpose of the money. Finally, the government contends that the cash was bundled in a way to prevent detection of drugs by a dog.

The government also counters the innocent ownership arguments made by Claimants. The government argues that the documents showing the legitimate source of the money are suspect as, based on its investigation, a number of the supposed investors have no knowledge of investing in ZIL. ZIL also failed to file income tax returns in accordance with Canadian law and further failed to comply with United State's law regarding the registration and transportation of money from a foreign source. Thus, the government argues that the subject funds can be linked to narcotics and that there is no legitimate source of the money.

## STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp. 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## ANALYSIS

As indicated above, the government contends that the subject funds "represents moneys furnished or intended to be furnished in exchange for a controlled substance or are the proceeds thereof," thus, making then subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).[1]  (Complaint,

---

[1] This code section provides:

¶ 19). The Civil Asset Forfeiture Reform Act of 2000 (CAFRA) governs the forfeiture of funds seized by the government. 18 U.S. C. § 983. CAFRA provides that the government must prove, by a preponderance of the evidence, that the funds are subject to forfeiture. Id. at § 983(c)(1); United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30, 670.00), 403 F.3d 448, 454 (7th Cir. 2005). CAFRA goes on to provide that if the government theorizes that the funds were used or related to a criminal offense, the government must "establish that there was a substantial connection between the property and the offense." 18 U.S. § 983(c)(3); $30,670.00, 403 F.3d at 454. Thus, the government must show by a preponderance of the evidence that the totality of the circumstances show that there is a substantial connection between the funds and illegal narcotics activities. $30,670.00, 403 F.3d at 467; See also United States v. $252,300.00 in United States Currency, 484 F.3d 1271 (10th Cir. 2007).

  As the moving party, Claimants have the burden of demonstrating "that there is an absence of evidence to support the nonmoving party's [the Government's] case that the currency is connected to illegal narcotics trafficking and thus subject to forfeiture under § 881(a)(6). See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Claimants have done this by producing documentation showing a legitimate source of the currency: investment funds received by ZIL from investors pursuant to loan agreements and Share Purchase Agreements in 2004. They also have documented that ZIL is engaged in the business of "buying, selling, tracking, and/or licensing of new corporations and/or enterprises" throughout North America in order to operate consignment depots for various items such as cars and jewelry. There is further documentation that Huynh is ZIL's business partner and that ZIL contracted with one Michel Jolicoeur to

---

All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter . . . . Id.

transport $675,000.00 from Canada to various locations in the United States at the direction of ZIL or Huynh.

Given the showing by Claimants of a legitimate source of the currency, to survive summary judgment, the Government, as the nonmoving party," must show through specific evidence that a triable issue of fact remains on issues on which she [the Government] bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

Unfortunately, the Government's summary judgment submissions fall far short of any documentary evidence showing any triable issue of fact to contradict the evidentiary showing by Claimants of a legal source of the currency. Instead, the Government presents a whole litany of suspicious circumstances (which themselves are supported by hearsay evidence) surrounding the claimed acquisition of the money as investment funds, its unusual entry from Canada into the United States, and subsequent transportation from California to Chicago and back to California. The Government also relies upon suspicious circumstance typically associated with the transportation of narcotics arising out of the traffic stop such as evidence showing that the drug detection dog, Rocco, made a positive alert to the currency thus indicating that it was tainted with the odor of narcotics or illegal drugs; the existence of inconsistencies between statements made by Claimant Huynh during the traffic stop and his current explanation regarding the source and purpose of the currency; and the fact that the currency was bundled in a way typically used by drug traffickers to prevent detection of drugs by drug detection dogs. These suspicious and unexplained circumstances may give rise to a reasonable suspicion or even probable cause to believe that the currency is connected to narcotics, but it is not adequate as documentary

evidence to defeat summary judgment. The government's evidence does not show, by a preponderance of the evidence, that there is a substantial connection between the subject funds and narcotics activity. Consequently, Claimant's motion for summary judgment is GRANTED.

CASE TERMINATED.

Entered this <u>29th</u> day of July, 2008

<u>   s/ Joe B. McDade   </u><br>
JOE BILLY McDADE<br>
United States District Judge